JACOB SINGER, as Administrator of the Estate of BEN-JAMIN L. SINGER, Deceased, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

**Negligence — railroads — when driver of automobile, killed as a result of being struck by a train at a railroad crossing, guilty of contributory negligence.**

Where in an action to recover for the death of plaintiff's intestate, who was killed as a result of a collision between one of defendant's trains and an automobile which he was driving, it appeared that when intestate came within one hundred and fifty feet of the track he could see along it over one thousand feet in the direction from which the train was approaching at a speed of forty-five miles an hour making all the noise incident to its movement and continuously sounding its bell and showing its headlight; that the crossing bell was ringing; that gates with lights upon them were being lowered into position which indicated danger and that the gatemen shouted at intestate and swung their lanterns across the highway, the jury should not be permitted to say that intestate was free from contributory negligence.

*Singer* v. *Erie Railroad Co.*, 193 App. Div. 896, reversed.

(Argued April 26, 1921; decided May 31, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 6, 1920, affirming a judgment in favor of plaintiff entered upon a verdict.

*Elbert N. Oakes* for appellant. As a matter of law the accident was caused or contributed to by the negligence of deceased. (*Oldenburg* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 414; *Avery* v. *N. Y., O. & W. Ry. Co.*, 205 N. Y. 502; *Douglas* v. *C., etc., R. Co.*, 100 Wis. 405; *Stack* v. *N. Y. C. & H. R. R. R. Co.*, 96 App. Div. 575; *Merrigan* v. *B. & A. R. R. Co.*, 154 Mass. 189; *Ellis* v. *Boston-& Maine R. R.*, 160 Mass. 600; *Lundergan* v. *N. Y. C. & H. R. R. R. Co.*, 203 Mass. 460, 462; *Van Riper* v. *N. Y. S. & W. R. Co.*, 71 N. J. L. 345; *Schnackenberg & Co.* v. *D., L. & W. R. R. Co.*, 86 N. J. L. 517, 519; *Blount* v. *Grand Trunk Ry. Co.*, 61 Fed. Rep. 375; *Koch* v. *Southern Cal. Ry. Co.*, 148 Cal. 677.)

*Frank Comesky* for respondent. Plaintiff's intestate was free from contributory negligence. (*Palmer* v. *N. Y. C. & H. R. R. R. Co.*, 112 N. Y. 241; *Glushing* v. *Sharp*, 96 N. Y. 676; *Oldenburg* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 417; *Kane* v. *N. Y., N. H. & H. R. R. Co.*, 132 N. Y. 164; *Beecher* v. *L. I. R. R. Co.*, 161 N. Y. 225; *House* v. *Erie R. R. Co.*, 26 App. Div. 562; *Wilbur* v. *N. Y. C. & H. R. R. R. Co.*, 8 App. Div. 142.)

HISCOCK, Ch. J. This action was brought to recover damages claimed to have resulted from the death of plaintiff's intestate negligently caused by one of defendant's trains at a highway crossing. The judgment which has been obtained by plaintiff of course imports that his intestate was free from negligence and that the defendant was guilty of it. These questions of negligence and contributory negligence are so closely connected that it is difficult to find one party guilty of fault without

absolving the other. We shall discuss the evidence as it especially bears upon and tests the character of intestate's conduct.

Defendant's road consists of two tracks running practically north and south. The train which killed intestate was moving south on the westerly track at a speed of about forty-five miles an hour. The highway upon which the latter was traveling in an automobile, as it approached the crossing where the collision occurred, ran practically parallel with the railroad tracks until it reached a point about one hundred and fifty feet distant therefrom where it turned to a direction substantially at right angles with the tracks and crossed the latter at grade. The intestate was coming from the same direction as the train and, therefore, his back was turned toward the latter until he reached this turn in the road whence he traveled practically at right angles with the direction of the train. The accident occurred in an early morning of July. The track, in the direction from which the train was approaching, was visible for a distance of about one thousand feet from the crossing to one traveling as intestate was, after he came within four hundred or five hundred feet of the crossing. The top of the automobile was down and it was moving at the rate of about twenty-five miles an hour as it approached the tracks. The train which struck deceased had its headlight lighted and continuously sounded its bell as it approached the crossing, and the crossing bell was also ringing.

This crossing was protected by gates, which consisted of a long, heavy pole or timber on each side of the tracks and extending clear across the highway. The timber near its butt end rested upon a standard and this end was so weighted that when the gate was left alone it was raised and when necessary it was lowered by a rope attached to the other or small end of the pole, which was pulled down into another standard or fixture about three feet high. Each pole was attended by a separate

gateman. On the occasion in question the gateman on the easterly or far side from intestate first heard the approaching train and he went out from his shanty to lower his pole or gate, which was completely lowered before intestate got upon the track. As he went out he gave warning to the gateman upon the other side who had to cross the highway before reaching the rope by which to pull down his gate and this gate had not been fully lowered to its proper resting place when intestate drove upon the tracks. The evidence is conflicting as to the exact extent to which it had been lowered. The gateman who was sworn in behalf of plaintiff testified that the end was within two or three feet of the proper position for it when closed; other evidence in behalf of plaintiff showed that intestate was able to drive under the gate without coming in collision therewith, which would require a height above the ground of at least six feet. This evidence, however, indicated that intestate was on that portion of the highway which was nearer to the end of the gate being pulled down than to the other end. There was attached to the center of each gate or pole a green light which could be seen for · a distance of four hundred or five hundred feet. As the gatemen saw intestate continue driving toward the tracks each one shouted at him and swung his lantern crosswise of the highway.

Upon these facts, which are the material ones, we are called on to decide whether a jury could say that the intestate could have gone upon the track in front of the approaching train without failing to exercise those faculties of hearing and sight which he was required to use for the purpose of detecting the approach of a train. It seems to us that this question is best and conclusively answered by a summary of the signals which he encountered as he approached the track.

When he came within one hundred and fifty feet of the track he could with perfect ease see for over one thousand

feet along the track on which a train was approaching at
the rate of forty-five miles an hour and not only making
all of the noise necessarily incident to such a movement
but continuously sounding its bell and showing its head-
light.   The crossing bell likewise indicated the approach of
the train.   The gates, whose movements were indicated
by the green lights suspended therefrom, were being moved
into a position which indicated danger, and whether the
nearest one had reached the lowest or the highest position
indicated by the evidence, the fact that it was being
lowered at all was a warning.   The gatemen shouted at
the intestate and swung their lanterns across the highway,
and the trial judge expressly charged that there was
nothing about these acts which made it possible to
interpret them as an invitation to come on.

    In the face of all of these signals and warnings we do
not see how it is possible to permit a jury to say that
intestate was vigilant or that he exercised any care at
all.   It is not a case where the train could not be seen
or heard by the exercise of such care or where it could
be surmised that the attention of the intestate was dis-
tracted or the failure to exercise his senses excused by
some fact, as for instance a false operation of the gate
or a misleading gesture of the gatemen.   The lowering
of the gates which was made visible to intestate by
the lanterns as he approached was a warning and cer-
tainly not an invitation which could have lulled him into
a sense of security and excused him from observing the
train which was rushing down upon him with its bell
ringing and its headlight burning.

    Each case of a crossing collision is characterized by
its particular facts and for that reason it is not worth
while to discuss at length the cases which have been
cited in support of plaintiff as holding his intestate free
from negligence.   All of them can be distinguished in
substantial particulars from this case and no one of them
in our opinion has upheld a recovery under such circum-

stances as attended and surrounded this intestate when he went upon defendant's tracks.

The judgment should be reversed and complaint dismissed, with costs in all courts.

CHASE, HOGAN, CARDOZO, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.